# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

LAURIE ANN JACKSON,

                         Plaintiff,

       v.                                    3:14-CV-350
                                                (GTS/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

_____

AMANDA R. JORDAN, ESQ., for Plaintiff
MONIKA K. CRAWFORD, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Glenn T. Suddaby, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

Plaintiff "protectively filed"[1] an application for Social Security Disability Benefits ("DIB") on June 27, 2008, alleging disability, from February 12, 2008, due to Crohn's disease, anxiety, and depression. (Administrative Transcript ("T.") 46, 86-92, 98, 390). The application was denied on November 19, 2008. (T. 47-52). On March 12, 2010, Administrative Law Judge ("ALJ") ALJ Mark Solomon conducted a hearing, at which plaintiff testified. (T. 25-45). On April 8, 2010, ALJ Solomon issued a

---

[1] The term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. §§ 404.630, 416.340. If a statement meeting the requirements of the regulations is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a later date.

decision finding that plaintiff not disabled (T. 11-21), and the Appeals Council denied plaintiff's request for review on October 6, 2010. (T. 1-4). Plaintiff then filed civil action 3:10-CV-1344 in the Northern District of New York, and Senior U.S. District Judge Neal P. McCurn, by a decision dated April 13, 2012, remanded the case for further proceedings before the Commissioner. (T. 474-96).[2]

A subsequent administrative hearing was held before ALJ Edward I. Pitts on November 29, 2012, at which plaintiff and a vocational expert ("VE") testified. (T. 415-68). ALJ Pitts found that plaintiff was not disabled, in a decision on December 17, 2012 (T. 390-409), which became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on January 29, 2014 (T. 377-81).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or

---

[2] Judge McCurn found, *inter alia*, that ALJ Solomon failed to consider substantial evidence of plaintiff's mental health limitations, erred in his credibility analysis, and should have consulted a vocational expert in light of plaintiff's more-than-minimal limitations due to depression and anxiety. (T. 494, 495-96).

whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him [per se] disabled . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417-18 (2d Cir. 2013) (quoting *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012)); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's residual functional capacity"); *Selian*, 708 F.3d at 418 & n.2.

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417 (quoting *Talavera v. Astrue*, 697 F.3d at 151; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera*, 697 F.3d at 151 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

In order to determine whether an ALJ's findings are supported by substantial evidence, the reviewing court must consider the whole record, examining the evidence from both sides, "'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Petrie v. Astrue*, 412 F. App'x 401, 403-404 (2d Cir. 2011) (quoting *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support of the ALJ's decision. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) (citing *Williams*, *supra*).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions."

*Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  FACTUAL OVERVIEW

Plaintiff was 43 years old on the alleged onset date and was 48 at the time of her 2012 administrative hearing. (T. 29, 421).  She earned a high school diploma and received training as a Certified Nurse Aide ("CNA").  (T. 421).  Plaintiff worked approximately 14 years as a CNA, going out on private disability in 2007 and claiming that she could no longer perform her duties as a result of anxiety and panic attacks.  (T. 30, 421-25).  Plaintiff last attempted to return to work in 2008, but left two different jobs after a few days of training because of her psychological problems.  (T. 30, 425).  Plaintiff resided with her husband in Rochester, New York until they divorced, after which she moved to Binghamton, in 2009, where she lived in her mother's home with various other family members.  (T. 32-33, 432-33, 626-27).

Plaintiff reported that her depressive symptoms started following the death of her grandmother, a grandson, and her father, between 2002 and 2004.  She began to attend counseling in 2006, after she was the victim of a sexual assault, and started more formal mental health treatment, including medication, in 2007.  (T. 626, 629).  By 2008, plaintiff was suffering from "full blown" depression as a result of marital problems, which ultimately ended in her divorce.  (*Id*.; T. 429-30).  After moving to Binghamton, plaintiff regularly saw a counselor and a psychiatrist, and her psychological condition improved somewhat (T. 33, 41), allowing her to engage in a variety of daily activities and to help care for other family members, including a schizophrenic aunt.  (T. 33-41, 403-04, 433-38, 621, 623, 627, 631-32).

Plaintiff had a history of Crohn's disease, for which she had surgery–a small

bowel resection–in 1999. (T. 209, 603). She experienced periodic "flare ups" exacerbated by stress; but a colonoscopy in 2011 confirmed that her Crohn's disease remained in remission. (T. 31, 41-42, 445-46, 603-05, 607-17). In the spring of 2012, plaintiff had a "full-blown outbreak" of plaque psoriasis, which was eventually brought under control by treatment with Enbrel. (T. 447-48, 603-04, 606-07, 639).

Plaintiff's brief has detailed the medical and other evidence (Pl.'s Brf. at 2-16, Dkt. No. 11-1), which defense counsel has incorporated by reference "with the exception of any inferences or arguments therein" (Def.'s Br. at 1, Dkt. No. 12). ALJ Pitts also discussed, at length, the evidence of record in his decision. (T. 393-95, 397-406). The court will further discuss the relevant medical and other evidence below, as necessary to analyze the issues disputed by the parties.

## IV.    **ALJ's DECISION**

ALJ Pitts determined that plaintiff met her insured status requirement for DIB through December 31, 2012. (T. 393). At step one of the sequential disability analysis, the ALJ noted that plaintiff had not engaged in substantial gainful activity after her alleged onset date of February 12, 2008. (T. 393). The ALJ next determined that plaintiff's depression, anxiety, Crohn's disease, and obesity were severe impairments. (T. 393-95). The ALJ found that plaintiff's plaque psoriasis did not meet the requirements for a severe impairment at step two. (T. 394-95). The ALJ determined, at step three, that plaintiff's impairments did not, separately, or in combination, meet or equal the criteria of any listed impairment in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 395-97).

After "careful consideration of the entire record," the ALJ next assessed plaintiff's residual functional capacity (RFC) (T. 397-406), concluding first that

plaintiff could perform the physical demands of work at all exertional levels. (T. 397). The ALJ further found that plaintiff could perform unskilled work, but with additional limitations–only occasional contact with supervisors, frequent contact with co-workers, and no contact with the general public; a non-production environment and no assembly line work; and easy access to a restroom. (T. 397). In making his RFC determination, ALJ Pitts gave "little weight" to the medical opinions of plaintiff's primary treating physician, Dr. Diallo, including the opinion that plaintiff would be absent from work four or more days per month and could only work four to five hours per day due to exacerbation of plaintiff's Crohn's disease. (T. 401, 404-05). The ALJ gave "some weight" to the medical opinions of plaintiff's treating psychiatrist, Dr. Apacible, and incorporated some of the psychiatrist's findings into the RFC determination. However, ALJ Pitts did not adopt the psychiatrist's opinion that plaintiff was disabled and that her ability to function would deteriorate if she returned to work; the ALJ found those aspects of the opinion were not well-supported by the evidence of record. (T. 403, 405). The ALJ accorded "great weight" to the medical opinion of consultative examiners Dr. Eurenius (T. 400), and the opinion of consulting psychologist, Dr. Finnity (T. 401-402), finding that both were supported by the objective clinical and/or laboratory findings.

At step four, the ALJ found that plaintiff could not perform any of her past relevant work because the nurse aide position involved semi-skilled work. (T. 406). Finally, at the step five, the ALJ considered plaintiff's age, education, work experience, and RFC, and found, based on the testimony of the VE, that there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (T. 406-08). Accordingly, the ALJ found that plaintiff was not disabled

7

within the meaning of the Act.  (T. 409).

## V. ISSUES IN CONTENTION

Plaintiff makes the following arguments:

(1)     The commissioner erred as a matter of law in evaluating the severity of plaintiff's mental impairment by rejecting the contrary opinions of plaintiff's treating sources and, in particular, by failing to consider plaintiff's potential absenteeism and her inability to work on a regular and consistent basis.  (Pl.'s Brf. at 18-22).

(2)     The ALJ failed to follow the "slight abnormality" standard in finding that plaintiff's psoriasis was not a severe impairment.  (Pl.'s Brf. at 22-24).

Defendant argues that substantial evidence supports the ALJ's mental RFC determination (Def.'s Brf. at 6-9), and that the ALJ properly found that plaintiff's plaque psoriasis was not a severe impairment (Def.'s Brf. at 4-6).  For the reasons set forth below, this court agrees with the defendant and recommends that the Commissioner's decision be affirmed.  The court will address the issues raised by plaintiff in reverse order.

## VI. SEVERE IMPAIRMENT

### A. Legal Standards

The claimant bears the burden of presenting evidence establishing severity of impairments at step two of the disability analysis.  *Briggs v. Astrue*, No. 5:09-CV-1422 (FJS/VEB), 2011 WL 2669476, at *3 (N.D.N.Y. Mar. 4, 2011) (Rep't-Rec.), *adopted*, 2011 WL 2669463 (N.D.N.Y. July 7, 2011).  A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1521(a) (noting that an impairment is not severe at step two if it does not significantly limit a claimant's

ability to do basic work activities).

The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include, (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404. 1521(b). "Severity" is determined by the limitations imposed by an impairment, and not merely its by diagnosis. The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe. *Hamilton v. Astrue*, No. 12-CV-6291, 2013 WL 5474210, at *10 (W.D.N.Y. Sept. 30, 2013) (quoting *McConnell v. Astrue*, No. 6:03-CV-521 (TJM), 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)).

An ALJ should make a finding of "'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (1985)). Although an impairment may not be severe by itself, the ALJ must also consider "the possibility of several such impairments combining to produce a severe impairment . . . ." SSR 85-28, 1985 WL 56856, at *3. However, a combination of "slight abnormalities," having no more a minimal effect on plaintiff's ability to work will not be considered severe. *Id.* The ALJ must assess the impact of the combination of impairments, rather than assessing the contribution of

9

each impairment to the restriction of activity separately, as if each impairment existed alone. *Id.*

The Second Circuit has held that the step two analysis "may do no more than screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). If the disability claim rises above a *de minimis* level, then the ALJ must undertake the remaining analysis of the claim at step three through step five. *Id.* at 1030.

Often, when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at step two may be harmless because the ALJ continued with sequential analysis and did not deny the claim based on the lack of a severe impairment alone. *Tryon v. Astrue*, No. 5:10-CV-537 (MAD), 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Commissioner of Soc. Sec.*, No. 7:10-CV-1244 (GLS/ATB), 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011) (Rep't-Rec.), *adopted*, 2011 WL 3876419 (N.D.N.Y. Aug. 31, 2011). This is particularly true because the regulations provide that combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523; *Dixon*, 54 F.3d at 1031.

## B. Analysis

Plaintiff did not initially claim psoriasis as a disabling condition (T. 98), and during the March 12, 2010 administrative hearing, she testified that she was not being treated for any physical condition other than Crohn's disease (T. 38). At the second hearing on November 29, 2012, plaintiff testified that she suffered from psoriasis, which was exacerbated by stress. (T. 447). Plaintiff recounted a "full-blown

outbreak" over 75% of her body in the spring of 2012, for which she was ultimately treated with Enbrel. (T. 447-48). When asked whether the psoriasis caused any "physical discomfort," plaintiff testified that "[i]t itches" and that "it's a self-esteem thing for me." (T. 448).

The medical records corroborated that plaintiff periodically had relatively mild symptoms of plaque psoriasis between August 2010 and late January 2012, when the flare-up started. (T. 609, 611, 613, 617, 621, 645, 651, 804, 807, 813). Even during the exacerbation, plaintiff's primary complaint of the effects of the psoriasis was that it was "embarrassing" and it affected her "self worth." (T. 640, 645). Dermatologist Alan S. Lerman, M.D., prescribed Enbrel in February 2012, but it appears that plaintiff was not able to purchase the medication until late April of that year. (T. 606-07, 640-41, 800). By early June 2012, plaintiff's symptoms had diminished (T. 603-04) and she reported to her mental health counselor that she felt the Enbrel was working (T. 639).

The ALJ found that plaintiff's plaque psoriasis was not a severe impairment because the condition, considered separately or in combination with other impairments, was only a "slight abnormality" that "would have no more than a minimal effect on the claimant's ability to perform work." (T. 394). The ALJ applied the correct legal standard, and substantial evidence supports the ALJ's finding. As the ALJ noted, neither the plaintiff nor any medical provider "identified any specific work-related limitation of functioning related to [plaintiff's] skin disorder." (T. 395). Psoriasis is often found to be a severe impairment in Social Security disability appeals, *e.g.*, when

it affects a claimant's hands or feet and limits his/her ability to walk or handle objects.[3] However, because the plaintiff provided no evidence that her skin condition did anything more than cause itching and embarrassment, the mere diagnosis of psoriasis, even if it occasionally flared up and caused significant symptoms, did not make it a "severe" impairment.[4] As the ALJ also observed, the medical evidence indicates that plaintiff's exacerbation in early 2012 was effectively treated with Enbrel, and plaintiff did not complain of any current symptoms when she testified in November 2012. (T. 394-95).

Even if the ALJ erred in finding that plaintiff's psoriasis was not "severe," any such error would be harmless. The ALJ found that plaintiff had other severe impairments, and then ALJ assessed plaintiff's RFC, considering "all symptoms." (T. 397). The primary impact of plaintiff's psoriasis was on her "self esteem," and the ALJ extensively discussed her psychological symptoms, including her purported difficulties in interacting with others, in determining her RFC. (T. 398, 404). Based on the authority cited above, any error in the ALJ's findings regarding the severity of her psoriasis was harmless because the ALJ continued the disability analysis through

---

[3] *See, e.g., Rivera v. Barnhart*, No. 04 Civ. 1484, 2005 WL 735936, at *3, 4, 7 (S.D.N.Y. Mar. 30, 2005) (ALJ found that claimant's psoriasis of the feet and obesity resulted in a "severe impairment" limiting her capacity to work, based *inter alia*, on medical opinion evidence that the psoriasis substantially limited her ability to stand or walk); *Boylan v. Astrue*, 32 F. Supp. 3d 238, 246-47 (N.D.N.Y. 2012) (noting medical opinion that plaintiff's psoriasis was "severe" and that working with her hands would "worsen" plaintiff's condition and put her at risk of infections).

[4] *See, e.g., Haltom v. Astrue*, No. 2:13-CV-227, 2013 WL 593717, at *2, 3, 4 (E.D. Cal. Feb. 15, 2013) (upholding the ALJ's determination that plaintiff's psoriasis was not a severe impairment because exacerbations were controlled with medication) (Rep't-Rec.), *adopted*, 2013 WL 5423494 (E.D. Cal. Sept. 26, 2013); *Duncan v. Astrue*, 782 F. Supp. 2d 9, 13 (D. Conn. 2011) ("there was . . . a lack of evidence that the plaintiff's psoriasis was severe").

step five.  *See also Stanton v. Astrue*, 370 F. App'x 231, 233 n. 1 (2d Cir. 2010) (we would not identify error warranting remand relating to the ALJ's failure to find that plaintiff's disc herniation was a "severe" impairment because the ALJ did identify other severe impairments at step two, so that plaintiff's claim proceeded through the sequential evaluation process).

## VII.  **MENTAL RFC/TREATING PHYSICIAN/CREDIBILITY**

The ALJ determined that plaintiff had the RFC to perform "unskilled" work, with occasional contact with supervisors, frequent contact with co-workers, and no contact with the general public; a non-production environment and no assembly line work; and easy access to a restroom.  (T. 397).  Plaintiff argues that the ALJ erred in not finding that plaintiff had more substantial mental health limitations, based on plaintiff's statements about her mental health symptoms and the opinions of plaintiff's treating sources, especially Dr. Diallo and Dr. Apacible.  (Pl.'s Brf. at 18-22).  In particular, plaintiff contends that the ALJ's RFC determination was undermined by his failure to consider plaintiff's potential absenteeism and inability to work on a regular and consistent basis.  (*Id*. at 19).  For the following reasons, this court concludes that the ALJ appropriately considered the opinions of treating physicians and plaintiff's credibility, and that his RFC determination was supported by substantial evidence.

### A. Legal Standards

#### 1. RFC

In rendering a residual functional capacity (RFC) determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Id.* (citing, *inter alia*, *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)). RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Id.* (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 5:09-CV-1120 (DNH/GHL), 2010 WL 3825629, at *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

#### b. Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons

14

that the report is rejected. *Halloran v. Barnhart*, 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

### c.    Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (citation omitted). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. *See* 20 C.F.R. §§ 404.1529, 416.929; *see also Foster v. Callahan*, No. 96-CV-1858 (RSP/GJD), 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. §§ 404.1529(c), 416.929 (c). When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following

15

symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

### B.    Analysis

#### 1.    Medical Evidence

##### a.    Dr. Diallo

Mamadou Diallo, M.D. completed a Physical Residual Functional Capacity Questionnaire on February 19, 2010, after seeing the plaintiff for only the second time. (T. 362-63, 366-67).  On the questionnaire, Dr. Diallo checked "yes" in response to a question about whether the patient experienced "exacerbations of the pain symptoms that would make it impossible . . . to function in a work setting[,]" also noting that plaintiff's "Crohn's disease" was the medical condition relevant to the doctor's answer.  In response to follow-up questions, Dr. Diallo opined that the plaintiff would be forced to miss "4 or more days per month" and could only perform "even simple work tasks" for "4-5 hours" per day as a result of the "pain" related to plaintiff's Crohn's disease.  (T. 363).

Notwithstanding plaintiff's claim that the ALJ failed to consider plaintiff's "potential absenteeism and inability to work on a regular and consistent basis" (Pl.'s Brf. at 19), the ALJ explicitly considered and rejected Dr. Diallo's opinion that

plaintiff would miss four or more days per months and be limited to working four to five hours per day as a result of her Crohn's disease. (T. 401, 404-05). The ALJ noted that the medical evidence established that plaintiff's Crohn's disease had been in remission since her 1999 surgery, and that any recurring symptoms were adequately controlled with medication and other conservative treatment. (T. 400, 405).[5] Because it was supported by this objective medical evidence, the ALJ gave "great weight" to the opinion of consulting examiner Karl Eurenius, M.D. in November 2008, who noted that plaintiff's Crohn's disease continued to be remission, although plaintiff continued to experience some mild diarrhea. (T. 209, 211, 400-401). The ALJ's RFC determination incorporated the only limitation suggested by Dr. Eurenius, that plaintiff have ready access to a bathroom. (T. 211, 397, 400). *See, e.g.*, *Netter v. Astrue*, 272 F. App'x 54, 55-56 (2d Cir. 2008) (reports of consultative and/or non-examining physicians may override opinions of treating physicians, provided they are supported by substantial evidence in the record); 20 C.F.R. § 404.1527(e)(2) (ALJs must consider the findings of state agency medical consultants and other program physicians because they are highly qualified and are also experts in Social Security disability evaluations).

In deciding to give "little weight" to the medical opinions of Dr. Diallo, the ALJ also noted that he only examined plaintiff on two occasions, and that his opinions were not supported by "his own scant findings." (T. 341-42, 366-68, 401, 405). *See* 20 C.F.R. § 404.1527 (c)(2)(I) ("the longer a treating source has treated you and the more

---

[5] Plaintiff had bouts of diarrhea and/or rectal bleeding in late 2010 and early 2012, but she was successfully treated with medication, and a colonoscopy in March 2011 confirmed internal hemorrhoids, but no gross evidence of inflammatory bowel disease. (T. 603-05, 607-17).

times you have been seen by a treating source, the more weight we will give to the source's medical opinion"). Indeed, Dr. Diallo's February 19, 2010 treatment report stated that plaintiff's "Crohn's disease seems to be in control[,]" and that "[t]his is the second time I am seeing [plaintiff] and it is difficult for me to evaluate patient that we don't have too much contact with . . . ." (T. 367). The ALJ also observed that Dr. Diallo acknowledged that the plaintiff's issues were more psychological than physical (T. 401, 405), and the doctor conceded that plaintiff's mental issues needed to be evaluated by a psychologist or psychiatrist (T. 366). *See* 20 C.F.R. § 404.1527 (c)(5) ("[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"). This court concludes that substantial evidence supported the ALJ's decision to give little weight to the opinions of treating physician Dr. Diallo, including his opinion regarding plaintiff's potential absenteeism and purported inability to work on a sustained basis.

### b.    Dr. Apacible

On February 4, 2010, psychiatrist Mariano Apacible, M.D., of Broome County Community Mental Health Services, completed a mental assessment of plaintiff. (T. 358-59). Dr. Apacible opined that plaintiff's ability to do work-related activities was "good" or "fair" in every category except dealing with work stress, for which plaintiff's ability was rated as "poor."[6] (*Id.*) In response to the question "[w]ould this

---

[6] After rating plaintiff's ability in various categories, Dr. Apacible added the comment "depending on her mood" in a section title "OTHER REMARKS." (T. 359). Earlier on the form, the psychiatrist noted that "due to depressive disorder, the [plaintiff] had labile depressed mood." (T. 358, 403).

patient's ability to function as stated above significantly deteriorate were he/she to return to any type of employment[,]" Dr. Apacible wrote "she has not worked for the past 3 years." (T. 359). Under the question "[i]s plaintiff disabled from full-time competitive employment[,]" Dr. Apacible answered "yes, at present." (*Id*.)

The ALJ accorded "some weight" to Dr. Apacible's opinions "because the [plaintiff's] limits regarding difficulty dealing with stress are generally supported by the objective medical evidence." (T. 403). The ALJ stated that his RFC determination incorporated some of Dr. Apacible's opinions about plaintiff's ability to handle stress and to interact with others. (T. 358, 397, 403). However, the ALJ did not adopt the psychiatrist's opinions that plaintiff was disabled from full-time employment and that her ability to function would deteriorate if she returned to work, because the ALJ found that those opinions were not well-supported by the record evidence. (T. 403). The ALJ concluded that plaintiff's current mental health treatment would enable her to respond appropriately to usual and routine work situations in an environment "that involved less complex tasks and less intensive interpersonal relating." (*Id*.).

As the ALJ noted, plaintiff began treatment for depression and anxiety in 2006, following a sexual assault, and has received outpatient treatment since 2007. (T. 148-50, 160-70, 250-60, 399, 621-24, 626-630). The ALJ found that, although plaintiff showed clinical symptoms consistent with the diagnoses of depression and anxiety, her mental health symptoms were adequately controlled with medication and counseling sessions. (T. 399, 402). On February 25, 2009, psychiatrist Syed I. Mustafa, M.D., evaluated plaintiff, diagnosing major depressive disorder, but reporting that plaintiff's mental status was "unremarkable," that she has been "doing well" on Seroquel and

Effexor, and that her Global Assessment of Functioning ("GAF") score was 54.[7] (T. 250, 254, 255, 257, 402). As the ALJ noted, plaintiff, in late 2009 and early 2010, "experienced a temporary increase in her symptoms relating to her divorce and relocation to Binghamton, New York . . . ." (T. 402, 626-630).[8] However, at her first administrative hearing in March 2010, plaintiff acknowledged some improvement in her mental health condition since her move to Binghamton, after which she made monthly visits to a psychiatrist and met with a counselor every two to three weeks. (T. 33, 41, 400, 669-75). Plaintiff periodically stopped seeing her psychiatrist and counselor in 2011, in part, because she was taking care of an aunt with schizophrenia four times per week. (T. 399, 621, 651). Nonetheless, by the summer of 2012, plaintiff's counselor, Sarah Harding, raised plaintiff's GAF score to 60 and reported that plaintiff "feels that the Seroquel and Effexor work well for her." (T. 406, 631-32).

The ALJ accorded "great weight" to the November 2008 opinion of examining, consultative psychologist, Kavitha Finnity, Ph. D, finding that it was supported by the objective clinical findings. (T. 401-02). Dr. Finnity found that, although plaintiff might have difficulty relating to others and appropriately dealing with stress, she could follow and understand simple directions and perform simple tasks; could maintain attention and concentration and a regular schedule; could learn new tasks and perform complex tasks under supervision; and could make appropriate decisions. (T. 216).

---

[7] The GAF is a 100 point scale, and 41-50 indicates "serious symptoms," 51-60 indicates "moderate symptoms," and 61-70 indicates "some mild symptoms." AMERICAN PSYCHIATRIC ASSN., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th Ed. Text Revision 2000) (DSM-IV-TR).

[8] Even during this time, mental health care providers determined that plaintiff's GAF score was between 50 and 55. (T. 627, 630).

The ALJ also gave "great weight" to the psychiatric review performed by the non-examining state agency medical consultant, R. Altmansberger, who found, *inter alia*, that plaintiff had mild limitations in her activities of daily living, and moderate limitations with respect to maintaining social functioning and maintaining concentration, persistence, or pace. (T. 229, 235, 402-03). As noted above, an ALJ may appropriately rely on the opinions of such non-treating physicians to the extent they are consistent with the other medical evidence of record.

To the extent Dr. Apacible expressed an opinion on the ultimate issue that plaintiff was disabled, that decision is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1); SSR 96-5p, 1996 WL 374183, at *1, 2 ("treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance"). Otherwise, this court concludes that the ALJ properly exercised his duty to resolve conflicting evidence with respect to plaintiff's mental-health-related limitations, and that substantial evidence supported his analysis of the medical evidence, including the opinions of treating physician, Dr. Apacible. *See, e.g., Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) ("It is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (genuine conflicts in the medical evidence are for the Commissioner to resolve).[9] The court further finds that the ALJ

---

[9] Plaintiff suggests, in passing, that the ALJ, in his RFC analysis, improperly rejected contrary evidence from plaintiff's treating therapists, Scherill Gordon and Sarah Harding (Miles). (Pl.'s Brf. at 19). *See Lafreniere v. Astrue*, No. 09-CV-167 (GTS/VEB), 2010 WL 3808566, at *6 (N.D.N.Y. July 27, 2010) ("While opinions from therapists and social workers

marshaled substantial medical evidence supporting his RFC determination.

## 2. Credibility

Applying the appropriate legal standard (T. 397), the ALJ concluded that, although plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements regarding the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the ALJ's RFC determination (T. 398). As discussed above, the ALJ appropriately analyzed the medical evidence, and substantial evidence supported his RFC determination to the extent it was inconsistent with plaintiff's claims of more serious mental-health-related limitations.

The ALJ also documented that plaintiff's activities of daily living were inconsistent with her claims that she could not concentrate or maintain attention and that she had marked difficulties interacting with other people. (T. 397-98). Plaintiff acknowledged that, although she no longer drive by herself, she could take public transportation by herself. (T. 34, 38, 439-40). Plaintiff was able to care for herself, except on a particularly bad day, and periodically helped care for several grandchildren and her schizophrenic aunt. (T. 34-35, 433-34, 621, 651). She socialized "with three

---

are not considered 'acceptable medical sources,' such opinions are nevertheless 'important and should be evaluated on key issues such as impairment severity and functional effects'") (quoting SSR 06-03p, 2006 WL 2329939, at *3) (Rep-t Rec.), *adopted*, 2010 WL 3810200 (N.D.N.Y. Sept. 22, 2010). The ALJ discussed and/or referenced reports of these therapists, including their observations about temporary exacerbations of plaintiff's mental health symptoms as a result of her marital problems. (T. 402, 403-04 (citing exhibits 11F-13F, 15F, and/or 22F, consisting of medical records from Unity Mental Health and Broome County Community Mental Health, for whom the therapists worked)). The ALJ properly evaluated medical and opinion evidence from these therapists and from other mental health medical sources which, overall, provided substantial evidence for the ALJ's RFC determination and his related conclusion that plaintiff's mental health symptoms were adequately controlled by treatment and medication.

or four very good friends" in Binghamton, attended a weekly activity with her grandson, regularly played bingo, and attended church. (T. 35-36, 437-38). She was able to do crafts projects, to the extent she could afford the cost. (T. 39-40, 438-39).

The ALJ, in assessing plaintiff's credibility, also pointed out inconsistencies in plaintiff's various statements about her symptoms and limitations. (T. 400). Most significantly, during the March 2010 administrative hearing, plaintiff acknowledged that there had been some improvement in her mental-health condition since she moved to Binghamton (T. 41), and she testified that she had "bad days," where she did not feel like doing anything, only once per month (T. 37, 42). By the time of the November 2012 hearing, plaintiff claimed that she had depressed days, when she was not able to function, "two or three times a week." (T. 441). In the interim, plaintiff complained numerous times to her counselor about the fact that she was not receiving Social Security disability benefits. (T. 635, 637-38, 655, 658, 663). Her last reports from Broome County Community Mental Health before the second hearing were generally positive, reflecting an improved GAF score and noting that plaintiff was doing well on her medication. (T. 631-33).

The court concludes that substantial evidence supports the ALJ's credibility analysis. While the record reflects that plaintiff still displayed symptoms of depression and anxiety, the ALJ reasonably concluded that she exaggerated her limitations.

### 3.    RFC

As discussed above, the ALJ did not err, in his RFC analysis, in evaluating the medical evidence, including the opinions of treating sources, or in assessing plaintiff's credibility. The court also concludes that substantial evidence supported the ALJ's

RFC determination. During the second administrative hearing, ALJ Pitts was patient and persistent in questioning plaintiff about "what kids of things really cause [her] stress." (T. 441-47, 452-54). The ALJ reasonably fashioned the mental-health related limitations on plaintiff's RFC based on her testimony and the other evidence of record, and thoroughly documented the basis for his RFC determination. (T. 397-406, 457).

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED**, that the decision of the Commissioner be affirmed, and the plaintiff's complaint **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated: April 7, 2015

Hon. Andrew T. Baxter
U.S. Magistrate Judge